Good morning ladies and gentlemen. Our first case for this morning will be Auto Driveway Franchise Systems v. Corbett. Mr. Sims. Good morning, Your Honor. May it please the court. I'm Charles Sims. I'm here on behalf of Mr. Corbett and I have with me Liz Bartolucci. To affirm the District Court's preliminary injunction order, this court must find amongst other things that we've heard in our brief, that the District Court did not err in providing that Auto Driveway Franchise Systems, which we all refer to as ADFS in this argument, would likely prevail on its unasserted implied in fact contract claim based on an expired franchise agreement that contained a non-competition agreement, notwithstanding that there's no evidence of an enforceable contract binding the parties to that non-compete, and notwithstanding there was no evidence sufficient to find that there was a breach, much less harm caused by that breach, and then even further from that, that there was irreparable harm. The court abused its discretion in entering the preliminary injunction contract because there was no enforceable contract. There's no question- I understand that the District Court entered this preliminary injunction and of course 1292A1 gives us authority over an appeal from a preliminary injunction, but the parties have talked a lot about subsequent events that have been going on in the District Court and I want to make sure that the amendments to the pleadings that have since taken place or anything else has not rendered this appeal moot. It has not rendered the appeal moot because, Your Honor, we have an injunction that's been entered. I believe that the amendments that have occurred after the fact, to the extent the court wants to take judicial notice of that, it's further evidence that in fact that this injunction was based on claims, alleged conduct, alleged contract theory, implied in fact, and alleged breach that wasn't pled in the original complaint. So the court had no jurisdiction at the time it entered that preliminary injunction to enter it because- But that's not a jurisdictional problem. I mean maybe, I mean you don't have to plead legal theories and complaints. The original complaint set out what the nature of the dispute between the parties was. That's not a jurisdictional issue. You're right. I misspoke. It lacked authority. The De Beers, out of the U.S. Supreme Court, that decision and subsequent decisions from other circuit courts, there's none before in this court, have talked about the court's authority to enter a temporary injunction when it's based on claims. Why is that a problem about the complaint in light of Rule 54C? It says the party gets the relief to which it's entitled whether or not it asked for that relief in the case. Well, the reason for that- I notice your briefs don't discuss Rule 54C. It seems important. I don't think that that provides an escape for the fact that this injunction was entered based on conduct and legal theories that weren't in the complaint and it goes- But you don't have to prove legal theories, as Judge Wood just said. You only, in federal court, you only have to prove, plead claims. That's true. You have to plead facts. No. You plead grievances. You plead complaints. You don't plead facts. That's Illinois. In federal court, you plead grievances. Well, in this circumstance, Your Honor, what they pled, they didn't plead any conduct that gave rise to the merits decision that the court looked at in order to make a preliminary injunction ruling. Of course, the principle element- Why isn't it sufficient, though, that they identified the provision in the contract that dealt with post-contract conduct, which is essentially what was at issue here in the district court's preliminary injunction ruling and the focus on tactical fleet? The reason that would be sufficient, Your Honor, is because there's no claim of any The fact that I attach a contract, that's all they needed to do. They didn't need to reference the provision. But if I attach a contract, that doesn't give me free reign. When we go to trial, we're going to go litigate the merits of a case- How can you claim there's no claim of breach? That was one of the specific claims here, and it was focused on the conduct of your client in creating or starting to create these new entities. And there were facts that were developed with respect to tactical fleet that weren't alleged. But again, you don't have to allege facts in the complaint. They didn't allege- There could not have been an issue with respect to post-term competition. And the provisions are different. I mean, what we have here- What do you mean there could not have been an issue with respect to post-term? Because post-term conduct, and the reason for that, Your Honor, was when this initial complaint was filed, the relationship was ongoing. They were asking for relief related to the existence of an ongoing relationship. They did not give their termination notice until after the complaint was filed. Nearly, it was almost 30 days later. I think it was July 20th or it wasn't. It was August 1st that they gave the termination notice. It was after the complaint was filed. And the relationship didn't end until September 27th. So is that a concession that the agreement was still in existence at the time? No, it's not, Your Honor. It's their allegation. Then why can't they plead an alternative theory? Because you're disputing that the agreement was in existence. So you can't have it both ways. You can't say, well, from our standpoint, it wasn't in existence. But from their standpoint, it was. Well, they had gotten an injunction based on the continuing existence of these contracts. They had already gotten an injunction, Your Honor. And their position was that under the existence of these ongoing relationships, they got the injunction based on the Lanham Act claims that they had in there. They got the injunction based on the breach of contract. There was two injunctions in this case. The first injunction they got, Your Honor, was an injunction that says, during the existence of this contract and our relationship, you must abide by these terms and not use our trademarks if we haven't authorized them in connection with any other entity. That's the thrust of the initial complaint. So precisely so. So in so many words, more or less, the contract covers the possibility of out-of-contract competition during the term of the arrangement. And it has the post-term anti-compete. This is as common as can be in franchise agreements. And the post-termination covenants not to compete are precisely for this situation. It's not like those things any more than an arbitration clause goes up in smoke when an agreement ends. They continue. So either way, I mean, I think they're just trying to pin down that inappropriate competition was happening. They allege, you know, this is still at the preliminary stage, of course. Even, Your Honor, even if you accept the position that this was an appropriate exercise of authority, then the question comes to whether or not it was appropriate in this circumstance to enter that preliminary injunction. And there isn't, Your Honor. And I will skip past, because I'm going to run out of time here, but I'll move quickly past the issue. But they haven't alleged the enforceability, an enforceable contract. They've asserted a hybrid theory of contracting, which is an implied and fact, along with an oral modification. When you look at the cases that talk about I'm not following you. I mean, the court's injunction, I'm just looking at it, essentially is trying to enforce by way of a preliminary injunction the provisions of this contract. You can't engage as an owner-operator in any managerial capacity in this for hire motor carrier business within the 50-mile radius and so on and so forth. But there's a modest bond that's required. That all seems very tailored to the scope of this contract. But the only way you get there, Your Honor, is you find that this expired agreement is in existence at the time that the court entered the order. Why, given the post-term competition provisions? Well, the court has assumed that it was enforceable as of the date of the termination. So you look at the date that Well, the court's preserving the status quo. The court is making a preliminary finding that that's the situation. And to preserve the status quo pending the full adjudication of these matters, the court's going to hold you to this non-compete. But the only way that the court can do that is to find on the likelihood of success that there is going to be an agreement in place. So we need to know what that agreement is. Or there was an agreement in place that then had a provision that continued past the final date of the agreement. Your Honor, they've alleged and implied, in fact, modified with an oral modification. They've alleged three separate contracts that were written contracts. That they've alleged, and you admitted in your original answer, were originally extended. And then extended on a month-by-month basis until September of 2018, when they decided to terminate them. So I don't know where you're coming from saying that they've only alleged and implied. In fact, they've identified three specific franchise agreements. Their allegation, and what the court relied on, was an implied-in-fact agreement, Your Honor. That's what they did. The only thing that changed was the durational clause. It wasn't a five-year. You admitted it was month-to-month, and the court essentially takes that as an evidentiary admission. Yeah, I would say, Your Honor, that when you look at that admission, first of all, we asked to withdraw that admission. The second thing is... But the court, I think, was understanding that you didn't necessarily have a Rule 36-worthy judicial admission. But it's still of evidentiary value. You can't just erase what you've said. But all it said was it was operating. It didn't say that there was an agreement. In order to have an oral agreement, you have to have a meeting of the mind. And there's plenty of evidence in the record that establishes there's no meeting of the mind on that. It's a significant change in the relationship to say that you have an agreement on a month-to-month basis to continue these things, because you're ignoring the other terms that are in this agreement. And there are notice provisions, written notice requirements required for renewal of these agreements. There's also provision that requires it be in writing, that there be no oral modification to this agreement. So what's happened here is we've got an agreement that the court has found that incorporates some of the terms of these franchise agreements, but not all of the terms. The court addresses all of that in its opinion when it looks at both Illinois and Virginia law. And frankly, the only term that it singles out as not continuing is the duration. Because you agreed it was month-to-month instead of a full-blown five-year continuation. There are other terms in there, Your Honor, including the whole term provision that goes about how you go about extending these agreements. There has to be a written notification. But that's what the court addresses. The court says both Virginia and Illinois recognize agreements inferred from conduct. And there was a lot of conduct that the court ticks through that indicated this agreement was still alive. Including a letter, or a draft letter, from your client's attorney that talked about the written extension. That was not a draft letter. It was an NDA. And at that point in time, don't forget, they had already given us a proposed renewal terms. It was rejected. They're negotiating, and the parties are in a contentious relationship at this point in time. And there was an NDA that had that in there. And it was rejected. Now, it didn't strike through that provision. But they didn't accept NDA. Had the agreements been in place, you wouldn't have needed an NDA. Because these agreements have confidentiality provisions already in them. And if you take a hard look at that NDA, you'll see there are a lot of different terms being interposed and that are not consistent with this franchise agreement. The parties' conduct, in fact, don't forget that the whole complaint is about conduct by Miss Corbett that's not consistent with these implied, in fact, contract terms. And that was the basis of their claim. And I've got just a few minutes. I want to just touch on one other point, Your Honor. They still haven't shown any breach. The district court admitted, in the district court's opinion, that the steps taken by Mr. Corbett at the time were merely tentative. At this point in time, the franchise relationship, the relationship that they're asserting was in existence, the business relationship has been terminated. And so Mr. Corbett's in the process of trying to figure out what he's going to do. He's taking tentative steps. But that isn't a breach. There's no such claim in Illinois law or Virginia law for preparation to breach. You either have breached and then caused damages and harm. And I'm going to run out of time, but that's the last two things I'd like this court to really focus on. There's no evidence of a breach, and there's no evidence of any harm. All right. We will hear from you on rebuttal. Mr. Felton. Please, the court, counsel. My name is Thad Felton. I represent the Appalachian, in this case, auto driveway franchise systems. I'd like to start off by answering one of the questions that you asked counsel earlier. We were talking about the relationship test. The Seventh Circuit hasn't explicitly adopted that test, but there are other courts, other circuits. I have no idea what it is. Well, the other courts that have talked about the relationship test talk about it in one of two ways. No. I mean, I have no idea what it is. The whole point of litigation is to determine what is related to something else. A relationship test just sounds like hot air. Well, the way it was framed in the papers before your honor is whether the relief afforded by the district court and the injury claimed in the preliminary injunction motion were related to the relief asked for in the complaint and related to the allegations of conduct in the complaint. To the extent you're asking that, you're just saying let's not pay any attention to Rule 54C, which says you get the relief to which you're entitled whether or not it was asked for in the complaint. Is there some need to supplement the rule here? I don't disagree with your honor. Rule 54 was not talked about by other parties. Yes, it wasn't, but there is a provision in the rule to handle this problem, and we shouldn't go around inventing tests when there's a rule about it. Fair enough, your honor. I guess is the relationship test necessary in light of Rule 54C? Does it add anything? I don't think the relationship test adds anything, but if you were to look at the relationship test that's been talked about by other circuits and district courts, the facts of this case meet that test. In other words, you're saying that the relief the district judge preliminarily gave you, in your view at least, falls squarely within the boundaries of this dispute. It's exactly part of the relief that we were requesting in Count 5, subparagraph 4 of our complaint, that the defendant be enjoined from competing against us. So, yes, your honor. What about his argument with respect to the operational aspect and whether or not tactical fleet was really operational? They're claiming that it was not operational, and therefore it doesn't meet the breach. Well, all the evidence that was submitted to the court about tactical fleet being in operation was defendant's own evidence. It came from filings with the federal government. It came from filings with the Virginia Secretary of State. It came from leases they entered into. And the filings with the federal government, the Department of Transportation, and the Federal Motor Carrier Safety Administration showed that tactical fleet had an address in Richmond, Virginia, was going to be operating out of that address, which would have been in violation of the 50-mile restriction in the non-compete provision. The Secretary of State incorporation papers for tactical fleet showed that they were based in Richmond, Virginia, another violation. They were meeting with, and Mr. Corbett admits, they were meeting with the two largest customers of auto driveway franchise systems, Element and Lease Plan. And the tactical fleet chief operating officer, on his email signature line, shows his address in Richmond, Virginia. So that, to me, is they're operating. They're entering into leases. They've established an office. They've hired employees. So I think that shows that they were operating, Your Honor. So are you conceding then that if they had just made a lot of preparations to go into business, that would not be enough to justify a preliminary injunction? I am not, Your Honor. I think that the district court had the right to maintain and preserve the status quo by entering the injunction when it entered the injunction. Kind of nip it in the bud, maybe. Yes, Your Honor. Okay. I want you to just set my mind at rest about the fact that proceedings have continued apace, it seems, in the district court while this has been going on. Because I gather when the original case was filed, you had not yet sent out the letter finally terminating this arrangement between the parties. So I guess at the moment of filing, we weren't in the post-termination stage, at least according to your client. Now we certainly are in the post-termination stage. But in the meantime, I guess the judge has granted Mr. Corbett's motion to amend his answer and let him file some counterclaims. Does all that activity in the district court have any effect on what's before us right now? I don't think so, Your Honor. Your Honor, I think that you have to review the record as it was before the district court when the preliminary injunction order was entered. In August 1st of this year, a 60-day notice was provided to AD Richmond that they were terminating the franchise agreement as of September 29th. 2018. I'm sorry. September 29th of 2018. We obtained the preliminary injunction order. The amended complaint was filed because we found out there was more activity going on involving Tactical Fleet and our clients. So we filed the amended complaint naming Tactical Fleet as a party and cleaning up some of the new facts that had developed since the original complaint was filed. So I think that what's before you, though, is the record that was in front of the court during the hearing. And there's no fundamental problem. Of course, sometimes if a permanent injunction, for example, laps around and supersedes a preliminary injunction, we just dismiss the appeal from the preliminary injunction as moot. But you would say that this relief is just as applicable to the – that at least it's not been mooted. The relief has not been mooted. If anything, it now is a question that's not before you of whether Tactical Fleet can be doing what it's doing in light of the entry of the preliminary injunction. Turning for a minute, Your Honor, to the issue that Mr. Sims brought up about the agreement and whether there was a month-to-month agreement or oral agreement. The district court correctly found that the franchise agreements had continued on a month-to-month basis through September 29, 2018. And there were three things that support that finding. The first is the defendant's own admissions. The second are the admissions of defendant's counsel. And the third is the course of conduct of the parties. Did this just come from thin air? I mean, sometimes I can think of leases that say if nobody does anything, it will continue on a month-to-month basis. But did the judge just kind of make that up? I don't know why it picked month-to-month as opposed to any other term for the renewals. I don't know the precise answer to that, Your Honor. But the case law, I think that we've cited both Virginia, Illinois, and many other states, says that when you have a franchise agreement, even if it has a renewal clause, and the parties don't exercise that renewal clause, but their conduct continues as if that agreement is still in effect, that you have a month-to-month implied contract at that point incorporating all the terms of the previous agreement. And in this case... Didn't you allege that in your complaint, that there was a month-to-month continuation? In our initial complaint, we just talked about the franchise agreement. We didn't characterize it as anything other than breach of the franchise agreement. In our subsequent amended complaint, we've characterized it as a month-to-month implied-in-fact agreement. But that's the one you say isn't before us because it postdates the record that existed when this injunction was entered. The amended complaint is not before you, Your Honor, but with the notice pleading, we talked about breach of the franchise agreement. We didn't say breach of a written agreement, breach of an oral agreement, or breach of an implied-in-fact agreement. So I don't think it was error at all for the judge to look at the contract and look at the course of conduct of the parties and find that there was an implied-in-fact agreement on a month-to-month basis. And I think that finding should be entitled to deference. I don't think you need to get to the issue of when the initial agreements expired. I can certainly address that, but from whenever they expired, there was a finding that the course of conduct showed that they continued on a month-to-month basis through September 29, 2018. And that's important for the statute of frauds, right? The fact that the statute of frauds only applies if there's not an underlying written agreement. In this case, we have two underlying written agreements. We have the Richmond Agreement and the Nashville Agreement, both that have been signed by Mr. Corbett, both of which contain the non-compete clause that we're seeking to enforce. In addition, there hasn't been a modification of the agreement. Mr. Corbett talks about a modification. I don't think any of the papers that are before you say what the modification is. In fact, I think all the evidence in the record shows that the course of conduct at any date prior to September 29, 2018, follows the course of conduct when those written agreements were in effect. One of the cases we cited, Your Honor, which was a Western District of Tennessee case, which I understand is not binding on this court, Amerispec versus Omni Enterprises. That case dealt with a fact pattern that is almost on point with the fact pattern we have before you today. That was a franchisor-franchisee dispute. The franchise agreement lasted for five years, had been renewed for additional five years up to 2015, and then they continued to operate for another three years. There was a dispute. The franchisor sought to enforce the non-compete in that case. In that agreement, the franchisee said you can't enforce it. The statute of frauds bars that. The court found that there was implied in fact contract after 2015 to 2018 and rejected the statute of frauds argument, arguing that there was a written document, a written agreement signed by the parties, and that was the franchise agreement that had been in effect for the previous ten years. Also, Your Honor, with regard to the statute of frauds, in the district court both parties cited Virginia law with regard to the statute of frauds, didn't cite Illinois law. And under Virginia law for enforcement of the statute of frauds, only one party doesn't have to be able to perform their obligations under the contract within a year. And we argued to the court, and the court agreed that on a month-to-month implied effect contract, at a minimum, auto driveway financial services could perform its obligations under the contract within the one-year period. Less than a year, yeah. So you're dating the post-term non-competition obligation from the date of your letter terminating the relationship? I'm dating the post-term obligation from the date the letter said the franchisee-franchisor relationship was going to end, which was September 29th, 2018. And then so we have a two-year period running right now? We have a two-year period running right now. Alternatively, if the court were to find that that wasn't the case, then we have a two-year period running from January 31st, 2018, which was the end of the five-year term on the Nashville franchise agreements. I think we're in agreement that all the franchise agreements have the exact same terms. That was the latest expiring of the agreements. Okay. I know also that the defendant has said that the term of the agreements were three years, not five years. The president of ADFS submitted an affidavit that hasn't been contradicted that said it is the practice of ADFS where they entered into franchise agreements for existing office locations to make that term a five-year term, and that five-year term would be reflected on the cover page of the franchise agreement. Mr. Corbett has said, well, it was a three-year term, not a five-year term, but his actions say differently. With the Richmond agreement, if you assume that it's a three-year term, that agreement would have expired on April 6th, 2014. Mr. Corbett signs a First Amendment to that agreement on December 29th, 2014. So seven or eight months later, why is he signing that amendment if the agreement is not in effect? So his actions contradict the stance he's taken here before you. You talked about the defendant's admissions in his answer, and he also made admissions in his declaration filed in opposition to the first temporary restraining order where he talked about the fact that as of July 26th, 2018, he was a franchisee of ADFS, and he said he had been a franchisee of ADFS for the last seven years. He also said that the franchise agreements had been continued by agreement of the parties to January 31st, 2018. That's not a legal issue. He knew that. That's an agreement that he says that they made, and he agreed with that. Also, defendant's attorney during the first temporary restraining order, a hearing, also admitted that they were a franchisee. He clearly stated in that transcript, in page 13, line 24, that we're the largest franchisee of ADFS. He asked the judge to fashion the relief in that first TRO pursuant to the language of that franchise agreement. Which the judge did. He also asked the judge not to put certain language in the franchise or in the temporary restraining order because that issue was already covered by the language of the franchise agreement in terms of the use of the trademarks and that kind of thing. I'm happy to answer any other questions you might have, or I will rest. I see none, so thank you very much. Thank you. Mr. Sims. Mr. Sims, I have one more generic question for you. A lot of the argument you've presented sounded to me as though you didn't think the district court was empowered to make preliminary factual findings in response to the motion for preliminary injunction. And I don't understand why that wouldn't be the case because that's exactly what judges do. They assess likelihood of success in the merits. They weigh harm to both sides. They make preliminary factual findings. And that's just what this judge did and looked at maybe some conflicting evidence, but he came out a certain way. Why don't we defer to those findings? It's an abuse of discretion review anyway. Your Honor, the point we were making in the brief is that given that this was submitted by affidavit, he had to give, the district court had to give equal weight. No, we didn't. Why do you say that? How can he weigh? Without an evidentiary hearing, how do you weigh the evidence? It's not unusual for a court to review evidence based on affidavits and make a determination that way. And you only have to weigh it if there is something conflicting that is material to the issue before the court. I agree on that. So what is it here that you're claiming was conflicting and material to the issue before the court in the affidavit? Mr. Corbett submitted an affidavit that said the tactical fleet was not operational. But there are underlying facts, though, that were also before the court, such as where was the office located and what had been done. I mean, the court doesn't have to just blind itself to everything else presented. But at that point in time, we have an office in Richmond because we're trying to figure out what to do. In the district court, in response to that, in looking at the affidavits and the evidence, the district court said the tactical fleet at most had made preparations to complete, which does not conflict with the affidavit of Mr. Corbett. But there's no breach. That's a separate issue. I'm focusing on the issue that you've raised, that the court can't make factual determinations based on the affidavits. If you look at his opinion, Your Honor, what he did was he found that there was conduct that he thought might lead to a breach, and then he puts R. But where he had it right in front of evidence that said there is no breach because he acknowledged that there... Well, with the word yet after it. I mean, this gets to one of the points we explored before. Your view seems to be that you can't have a preliminary injunction until there's already a violation and the judge is saying stop it as opposed to a prophylactic measure to preserve the status quo. Absolutely, Your Honor. I'm saying that because how do you show irreparable harm? How do you show irreparable harm under these circumstances? How do you show? Did you challenge irreparable harm? I don't see... We did. We challenged the harm. I don't see you raising that as an issue on appeal. We've argued on appeal that there's no harm. There was no harm. There is no finding of harm, and the court did find harm. Well, the court did have a finding of harm. But we show that the factual allegations upon which the court talks about, and he says in there, it's tentative, but there's no actual competition because Mr. Ruth, the CEO of ADFS, submitted an affidavit, and he said that he found on a Department of Transportation website a tactical fleet services application. That is not tactical fleet. It's tactical fleet one. Mr. Corbett's affidavit says they were thinking about it, and they're not pursuing tactical fleet one. Mr. Ruth, in his affidavit, said that there was no authorization by the Department of Transportation to transport the vehicles. In order for there to be a breach, you have to be both an operational company operating. Use the word operating twice in competitive business. You have the operational company operating as a for hire vehicle transportation services. That evidence is wholly lacking in this case, Your Honor. Thank you. All right. Thank you very much, Mr. Sims. Thank you, Mr. Felton. We will take the case under advisement.